J-A18036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT JOHN HAVRILLA, | : | |
| | : | |
| Appellant | : | No. 1766 WDA 2018 |

Appeal from the Judgment of Sentence Entered October 31, 2018
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0009273-2017

BEFORE:  BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED OCTOBER 16, 2019**

Robert John Havrilla ("Havrilla") appeals from the judgment of sentence imposed after a jury convicted him of one count of criminal trespass.[1]  We affirm in part and reverse in part.

The trial court concisely set forth the relevant procedural and factual history in its Opinion, which we incorporate as though fully set forth herein. *See* Trial Court Opinion, 2/20/19, at 1-4.

In summary, in July 2018, Havrilla invaded the attic of his neighbors' ("victims") residence, located at 524 N. Taylor Avenue, Pittsburgh, PA (hereinafter, "victims' Property").  Havrilla owns a vacant investment residential property, 522 N. Taylor Avenue, Pittsburgh, PA (hereinafter, "Havrilla's Property"), which is located directly next door to the victims'

---

[1] *See* 18 Pa.C.S.A. § 3503(a)(1)(i).

Property. The two row houses have a shared wall, and are connected by a common attic crawl space, to which Havrilla had access via Havrilla's Property. After suspecting that Havrilla had trespassed into the section of the attic crawl space associated with the victims' Property (hereinafter, "the victims' crawl space"), the victims installed a video surveillance camera in the area. The video recording revealed that, on July 17, 2018, Havrilla trespassed into the victims' crawl space, and remained there for 25 minutes.

Following Havrilla's conviction for criminal trespass, on October 31, 2018, the trial court sentenced him to five years of probation, and ordered him to pay the victims $2,245.00 in restitution. Notably to this appeal, the court imposed a probation condition prohibiting Havrilla from accessing Havrilla's Property, aside from the time frame from 10:00 a.m. to 2:00 p.m., on Mondays through Fridays (hereinafter, the "probation condition"). The court also prohibited Havrilla from entering the victims' Property, and imposed a no-contact Order concerning the victims (hereinafter, the "No-contact Order").

In this timely appeal, Havrilla presents the following issues for our review:

I.   WHETHER THE TRIAL COURT ERRED IN ADMITTING VIDEO RECORDINGS THAT WERE SECONDARY RECORDINGS OF THE ORIGINAL VIDEO[,] AND IN VIOLATION OF THE BEST EVIDENCE RULE?

II.  WHETHER THE COMMONWEALTH PRESENTED INSUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT [HAVRILLA] ENTERED [THE VICTIMS' PROPERTY] WITH THE

KNOWLEDGE THAT HE WAS NOT LICENSED OR PRIVILEGED TO DO SO?

III. WHETHER [HAVRILLA'S] CONVICTION WAS AGAINST THE WEIGHT OF THE EVIDENCE?

IV. WHETHER THE TRIAL COURT ERRED IN ORDERING [HAVRILLA] TO PAY RESTITUTION[,] WHEN THERE WAS NO EVIDENCE TO CONNECT THE RESTITUTION TO THE CRIME [OF] WHICH [HAVRILLA] WAS HELD CRIMINALLY RESPONSIBLE?

V. WHETHER THE TRIAL COURT ERRED IN INCLUDING AN UNCONSTITUTIONAL [PROBATION] CONDITION … WHEN FORBIDDING [HAVRILLA] FROM GOING TO [HAVRILLA'S] PROPERTY FOR TWENTY HOURS EACH DAY AND ON WEEKENDS?

Brief for Appellant at 13 (issues renumbered, capitalization in original).

In his first issue, Havrilla argues that the trial court erred in denying his Motion *in limine*, wherein his trial counsel sought the exclusion of the video evidence that showed Havrilla entering the victims' crawl space. ***See id.*** at 26-34. Havrilla points out that the victims had "re-recorded" the original video footage captured by the surveillance camera (*i.e.*, by using the victims' home computer to make a recording of the original video), and it was this "secondary" recording that the trial court improperly admitted at trial. ***Id.*** at 29. According to Havrilla, this video was not the "best evidence" for purposes of admissibility,[2] and thus should have been excluded, where the original surveillance video was not preserved. ***Id.*** at 30.

_____

[2] The trial court explained the "Best Evidence Rule" in its Opinion, which we discuss ***infra***.

- 3 -

When considering challenges to the admissibility of evidence, we employ a well-settled standard of review:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. McGriff***, 160 A.3d 863, 871 (Pa. Super. 2017) (citations omitted).

In its Opinion, the trial court summarized the law pertaining to the Best Evidence Rule, addressed Havrilla's challenge to the admissibility of the video evidence, and correctly determined that this claim lacks merit. ***See*** Trial Court Opinion, 2/20/19, at 4-5. We agree with the trial court's analysis and determination, and discern no abuse of its discretion.[3] Therefore, we affirm on this basis in rejecting Havrilla's first issue. ***See id.***

In his second issue, Havrilla challenges the sufficiency of the evidence supporting his trespass conviction, asserting that it cannot stand because the Commonwealth failed to prove that he entered the victims' Property knowing that he was not licensed or privileged to do so. ***See*** Brief for Appellant at 34-

---

[3] Additionally, our review reveals that the case upon which Havrilla relies in support of his claim, ***Commonwealth v. Lewis***, 623 A.2d 355 (Pa. Super. 1993), is distinguishable and unavailing.

37 (citing 18 Pa.C.S.A. § 3503(a)(1)(i) (providing that "[a] person commits

an offense if, *knowing that he is not licensed or privileged to do so*, he

… enters, gains entry by subterfuge or surreptitiously remains in any building

or occupied structure ….") (emphasis added)).  Havrilla asserts that

> the testimony given at trial not only proved that [the victims] and
> [Havrilla] never discussed whether [Havrilla] was allowed to enter
> the [victims'] crawl space, but it also showed that [Havrilla] was
> previously authorized to be on the [victims'] [P]roperty … by a
> previous tenant and possible owners of said [P]roperty.

Brief for Appellant at 35.  Additionally, Havrilla contends that

> [o]n one of his visits to renovate Havrilla's Property, [Havrilla]
> observed a cat destroying [Havrilla's] [P]roperty[,] before
> returning to [the victims'] [P]roperty [by] utilizing a small hole in
> the drywall of the [victims'] crawl space.  [Havrilla] decided to
> enter the [victims'] crawl space and patch the hole himself in order
> to remedy the cat issue[,] … with minimal intrusion on [the
> victims].

*Id.* at 35-36; *see also id.* at 37 (asserting that only Havrilla, not the victims,

had access to the victims' crawl space).

We apply the following standard of review when considering a challenge

to the sufficiency of the evidence:

> [W]hether[,] viewing all the evidence admitted at trial in the light
> most favorable to the verdict winner, there is sufficient evidence
> to enable the fact-finder to find every element of the crime beyond
> a reasonable doubt.  In applying the above test, we may not weigh
> the evidence and substitute our judgment for the fact-finder.  In
> addition, we note that the facts and circumstances established by
> the Commonwealth need not preclude every possibility of
> innocence.  Any doubts regarding a defendant's guilt may be
> resolved by the fact-finder unless the evidence is so weak and
> inconclusive that as a matter of law no probability of fact may be
> drawn from the combined circumstances.  The Commonwealth
> may sustain its burden of proving every element of the crime

beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

In its Opinion, the trial court addressed and rejected Havrilla's sufficiency challenge, finding that the Commonwealth presented "an abundance of evidence regarding the element of knowledge." Trial Court Opinion, 2/20/19, at 6; *see also id.* at 6-7. We agree with the trial court's sound analysis and determination, and therefore affirm on this basis with regard to this issue. *See id.* at 6-7.

In his third issue, Havrilla contends that the jury's verdict was against the weight of the evidence, and the trial court abused its discretion in rejecting Havrilla's weight challenge.[4] *See* Brief for Appellant at 47. In support of this bald claim, Havrilla merely "incorporates by reference" his argument in connection with his sufficiency challenge, which we already rejected above. Nevertheless, we will briefly review this claim.

In order for an appellant to prevail on a challenge to the weight of evidence, he or she must establish that the evidence supporting a conviction

---

[4] Havrilla preserved his challenge to the weight of the evidence in his timely Post-sentence Motion.

is "so tenuous, vague, and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Smith*, 146 A.3d 257, 265 (Pa. Super. 2016) (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of evidence…." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). Moreover, "[t]he weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted).

In its Opinion, the trial court addressed Havrilla's challenge to the weight of the evidence and determined that it did not abuse its discretion in rejecting this claim. *See* Trial Court Opinion, 2/20/19, at 7-8. Since we agree with the sound reasoning of the trial court, and the verdict also does not shock our collective conscience, we affirm on this basis as to this issue. *See id.*

In his fourth issue, Havrilla argues that the trial court imposed an illegal sentence, insofar as the record does not support the award of $2,245.00 in restitution to the victims (the "restitution Order"). *See* Brief for Appellant at 38-41. Havrilla urges that there is no nexus between his alleged conduct and the restitution ordered, pointing to the victims' allegation that Havrilla had removed insulation from the victims' crawl space, which the victims had to replace. *See id.* at 39-40 (stating that "the insulation that was shown to be replaced on the receipt provided by [the victims] does not show that the

replacement insulation was being placed in any portion of the [victims' crawl space] to which [Havrilla] was said to have entered."). Havrilla further emphasizes that the Commonwealth did not charge him with any crime that stemmed from his purported removal of insulation from the victims' Property, nor did the video surveillance footage show Havrilla removing or destroying any insulation. *Id.* at 40.

Where an appellant challenges the legality of a restitution order, our standard of review is whether an error of law occurred. **Commonwealth v. Dietrich**, 970 A.2d 1131, 1133 (Pa. 2009). When evaluating a legality claim, this Court's standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Stokes**, 38 A.3d 846, 858 (Pa. Super. 2011).

In its Opinion, the trial court set forth the applicable law, addressed Havrilla's claim, and determined that the restitution Order was lawful and appropriate in light of the record. **See** Trial Court Opinion, 2/20/19, at 9-10. As the trial court's determination is supported by the record, and we discern no error of law, we affirm on this basis in rejecting Havrilla's claim. **See id.**[5]

---

[5] As an addendum, we note that at sentencing, the trial court admitted into evidence an estimate prepared by an insulation installation company, which stated that it would cost $2,245.00 to repair the problems in the victims' crawl space (*i.e.*, the amount of restitution eventually ordered by the trial court). N.T., 3/31/18, at 14 (Commonwealth's Exhibit 1).

In his final issue, Havrilla asserts that the trial court unlawfully imposed the probation condition, which must be vacated as being unduly restrictive and improperly punitive. **See** Brief for Appellant at 41-46. We agree.[6]

Havrilla directs our attention to the statute governing probation conditions, 42 Pa.C.S.A. § 9754(b) and (c), and the trial court's determination that the probation condition was authorized and appropriate under subsection 9754(c)(13), which permits a court to require an offender "[t]o satisfy any other conditions *reasonably related to the rehabilitation* of the defendant and *not unduly restrictive* of his liberty or incompatible with his freedom of conscience." **Id.** § 9754(c)(13) (emphasis added). According to Havrilla, the probation condition is punitive, not rehabilitative, in nature, and therefore unlawful. **See** Brief for Appellant at 43-44 (citing **Commonwealth v. Crosby**, 568 A.2d 233, 235 (Pa. Super. 1990) (explaining that the authorized probation conditions of section 9754(c) are behavioral restrictions or

---

[6] We acknowledge the Commonwealth's contention that Havrilla's claim presents a challenge to the discretionary aspects of the sentence, **see**, **e.g.**, **Commonwealth v. Dewey**, 57 A.3d 1267, 1269 (Pa. Super. 2012), and that the Commonwealth objects to the absence of a Pa.R.A.P. 2119(f) statement in Havrilla's brief. **See** Brief for the Commonwealth at 39; **see also Commonwealth v. Robinson**, 931 A.2d 15, 19 (Pa. Super. 2007) (*en banc*) (stating that if an appellant raising a challenge to the discretionary aspects of sentencing fails to include a Rule 2119(f) statement in the brief, and the Commonwealth objects to this failure, then the claim is waived). However, we do not find the rule in **Robinson** to be applicable to the instant case, where (1) the related cases that we discuss **infra** do not expressly identify the relevant claims as challenges to the discretionary aspects of sentencing; and (2) Havrilla's claim is meritorious.

conditions, and are not punitive, and vacating the condition of defendant's probationary sentence wherein the court ordered the forfeiture of defendant's truck, which was punitive in nature)).

In its Opinion, the trial court stated as follows in support of its determination that the probation condition is lawful and appropriate:

> By restricting [Havrilla's] access to [Havrilla's] [P]roperty to between the hours of 10:00 A.M. and 2:00 P.M., Monday through Friday, the [c]ourt *did not* prohibit or deny [Havrilla] use of his property, but rather[,] struck a balance between the rights of [Havrilla] and the need to enforce and promote the [N]o-contact [Order] with the victims, who are the immediate neighbors of [Havrilla]. The [victims'] [P]roperty … has been the victims' residence for eight [] years. The adjoining [Havrilla's] [P]roperty … is an investment property that has been without electricity for the entire eighteen [] years [that Havrilla] has owned it. The lack of utilities makes the residence uninhabitable and restricts [Havrilla] to working on [Havrilla's] [P]roperty solely during daytime hours. Accordingly, twenty-four [] hour access to [Havrilla's] [P]roperty is unnecessary. The [c]ourt's probation condition is consistent with the daytime hours that [Havrilla] utilizes [Havrilla's] [P]roperty and is not unduly restrictive.
>
> The [c]ourt also had to consider the reality of the situation, [*i.e.,*] that the victims and [Havrilla] have the chance for incidental contact for the foreseeable future, since they are immediate neighbors. Due to the nature of the crime, the unique relationship between the parties and the imposition of a [N]o-contact [O]rder, the [probation] condition subjecting [Havrilla] to limited use of his uninhabited investment property is both reasonable and in furtherance of his rehabilitative needs, as it substantially limits potential contact with the victims, while serving to remind [Havrilla] of his illegal conduct.

Trial Court Opinion, 2/20/19, at 8-9 (emphasis in original, footnote citations omitted).

Havrilla counters that, since he and the victims reside in the same neighborhood, the probation condition will not necessarily aid in limiting contact between the victims and Havrilla. Brief for Appellant at 44. Additionally, Havrilla complains that the probation condition, which permits him to access Havrilla's Property for merely four hours per weekday, "does not allow him to be a responsible and attentive property owner[,]" and has resulted in weather-related damage to Havrilla's Property, which Havrilla is "powerless to fix." *Id.* at 45. Finally, according to Havrilla, since his arrest, he has blocked his access to the victims' crawl space with plywood. *Id.* at 42.

Contrary to the trial court, we conclude that the probation condition is unduly restrictive, and therefore in violation of 42 Pa.C.S.A. § 9754(c)(13) (providing that a condition of probation must not be unduly restrictive). Moreover, there are less restrictive alternatives already in place that limit contact between Havrilla and the victims, *i.e.*, the No-contact Order,[7] and the condition of probation barring Havrilla from accessing the victims' Property in any fashion. Nor can we agree with the trial court that the probation condition is "reasonably related to the rehabilitation" of Havrilla, *see id.*, where its

---

[7] A review of the sentencing transcript reveals that the No-contact Order is clear and sufficiently restrictive. *See*, *e.g.*, N.T., 3/31/18, at 17 (entering the No-contact Order on the record, and emphasizing that Havrilla "really ha[s] no need to even lay eyes on [the victims,]" and directing that, in the event Havrilla comes into contact with the victims, he must immediately take action to avoid interacting with them), 18-22 (exhaustively cautioning Havrilla that if he violates any condition of his probation, or "step[s] one toe off of the razor's edge into my purview[,]" the trial court will revoke Havrilla's probation and impose a prison sentence).

primary purpose was to limit contact between the victims and Havrilla, rather than rehabilitation. *See **Commonwealth v. Hall***, 994 A.2d 1141, 1145 (Pa. Super. 2010) (*en banc*) (relying upon ***Crosby***, ***supra***, and holding that the sentencing court erred when it ordered the defendant, as a condition of probation pursuant to subsection 9754(c)(13), to contribute to the financial support of the young children of the individual who the defendant had killed, where "the true purpose behind the order was clearly to support the decedent's children and not to rehabilitate [the defendant]." (emphasis omitted)). Accordingly, we must vacate the probation condition, ***see id.***, but affirm Havrilla's judgment of sentence in all other respects.[8]

Judgment of sentence affirmed in part and reversed and vacated in part, in accordance with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2019

---

[8] Because vacating the probation condition does not disturb the overall sentencing scheme (particularly where the No-contact Order is already in place), no remand for resentencing is required. *See **Commonwealth v. Thur***, 906 A.2d 552, 570 (Pa. Super. 2006) (finding no need for remand because vacating a particular penalty did not disturb the sentencing court's overall sentencing scheme).

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA

V.

ROBERT HAVRILLA,

Appellant,

Docket No. CC# 2017009273

Superior Court No. 1766 WDA 2018

**OPINION**

**JUDGE MARK V. TRANQUILLI**

Copies served by first class mail to:

Law Office of Justin J. Ketchel, LLC.
Anthony Jackson, Esq.
429 Fourth Avenue
1600 Law and Finance Building
Pittsburgh, PA 15219

Allegheny County District Attorney's Office
Michael W. Streily, Esq.
401 Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219

The Superior Court of Pennsylvania
Office of the Prothonotary
310 Grant Street, Suite 600
Pittsburgh, PA 15219

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA          Docket No. CC# 2017009273

V.                                    Superior Court No. 1766 WDA 2018

ROBERT HAVRILLA,

Appellant,

## OPINION

### MARK V. TRANQUILLI, J.

Appellant, Robert Havrilla appeals from the judgment of sentence order imposed after a jury trial wherein he was found guilty of one (1) count of Criminal Trespass, 18 Pa.C.S.A. §3503(A)(1)(i).

On July 20, 2017, Appellant was charged with Burglary, 18 Pa.C.S.A. §3502(A)(1)(ii), Criminal Trespass, 18 Pa.C.S.A. §3503(A)(1)(i) and Stalking, 18 Pa.C.S.A. § 2709.1(A)(1). On May 2, 2018 the Court held a hearing to address Appellant's Motion in Limine, regarding the Commonwealth's video surveillance evidence. The Court denied the motion and the case proceeded to a jury trial on the above referenced charges, with the jury returning a guilty verdict as to the single count of Criminal Trespass.

On October 31, 2018 this Court imposed a sentence of five (5) years of probation. Conditions of his probation are that he is to have no contact with the victims; pay $2,245 in restitution to the victim, Jerome Kennedy; and he may only use the 522 North Taylor Avenue property between the hours of 10:00 A.M. - 2:00 P.M., Monday through Friday. Appellant filed a timely Post Sentence Motion that was denied on November 20, 2018. A Notice of Appeal

2

followed on December 14, 2018 along with a Concise Statement on January 9, 2019. This Opinion follows.

By way of brief summary, Appellant, and the victims, Jerome Kennedy and Ashley Smith, owned and/or occupied adjoining properties, located respectively at 522 and 524 North Taylor Avenue in the City of Pittsburgh. The properties are in fact row houses with a shared wall that extends up through the second floor. An attic is located on the third floor which was divided by a sheetrock wall prior to the occupancy of either party in this case. However, a crawl space stretched along the width of properties allowing for unobstructed access to the other's property. It is uncontested that Appellant purchased 522 North Taylor Avenue approximately eighteen (18) years ago and has never resided there. The property was purchased as an investment and it has remained vacant and without electricity during his years of ownership. Appellant testified to making periodic inspections and stated he has performed minimal work at the location. Conversely, the victims have resided full time at 524 North Taylor Avenue for approximately eight (8) years. It was apparent from the trial that Appellant and the victims were not friendly. Their respective testimony was peppered with examples of on-going neighbor disputes involving the police.[1] In fact, Appellant acknowledged he has never once been invited over to Mr. Kennedy's residence.[2] In July of 2018, after suspecting that Appellant had trespassed into his attic, Mr. Kennedy installed a surveillance camera in his attic to record the area around the crawl space. On July 17, 2018 the camera captured Appellant entering the victims' attic through the crawl space where he remained for approximately twenty-five (25) minutes. Appellant admitted at trial that it was him on the video.[3] By way of explanation, he

---

[1] Jury Trial Transcript Day One, July 24, 2018, at 76-77, 166, 176-177.
[2] Id at 166, 208.
[3] Id. at 196-203, 205-206.

3

testified that he entered the victims' attic through the crawl space to close off an opening he believed a cat was using to travel from the Kennedy's property into his property.

Appellant raises four (4) issues in his Concise Statement. The first issue alleges that the Court erred in finding that the Best Evidence Rule did not apply, thereby admitting a secondary recording of the surveillance video footage. Pa.R.E. 1002, more commonly referred to as the Best Evidence Rule reads as follows:

> An original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise.

Pa.R.E. 1002.

However, the Rule is applicable only if the Commonwealth must prove the contents of the writing, recording or photograph to establish the elements of its case. *Commonwealth v. Fisher*, 764 A.2d 82, 88 (Pa.Super. 2000). There is no question that the Best Evidence Rule was at issue in this case, as the video footage was presented by the Commonwealth as evidence of Appellant's physical trespass. As such, the Court conducted an evidentiary hearing on May 2, 2018 to determine applicability of the Rule. Pa.R.E. 1004, read in conjunction with Rule 1002, excuses the use of the original and allows for use of secondary evidence when the original is not available at trial through no fault of the Commonwealth.

> An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:
> a. all the originals are lost or destroyed, and not by the proponent acting in bad faith;
> b. an original cannot be obtained by any available judicial process;
> c. the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or

4

> d. the writing, recording, or photograph is not closely related to a controlling issue."

Pa.R.E. 1004.

Relevant to this issue, the Court heard from Jerome Kennedy who testified that he installed a security camera in his attic for the purpose of obtaining evidence of Appellant entering his property through the attic. He explained that system automatically purges footage after forty-five (45) days[4] and that he made a secondary recording of the footage for that reason. Mr. Kennedy denied editing or manipulating the footage, explaining that the system records continuously over a twenty-four (24) hour period, so the secondary copy he made begins only upon Appellant making entry.[5] Finding Mr. Kennedy credible, this Court determined that the original was not available and was not destroyed by an act of bad faith, satisfying Pa.R.E. 1004(a). The case *sub judice* is analogous to *Com. v. Loughnane,* wherein Superior Court upheld the trial court's finding that the Best Evidence Rule did not apply, as there was no bad faith by the proponent under facts where video footage was systematically deleted after a certain number of days. 128 A3d 806, 813-814 (Pa.Super. 2016). As such, the Court's denial of Defendant's Motion in Limine should be affirmed.

Appellant next alleges that the conviction is based on insufficient evidence. "In reviewing a sufficiency challenge, a court determines whether the evidence, viewed in the light most favorable the verdict winner, is sufficient to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Robinson,* 936 A.2d 107, 108 (Pa.Super. 2007), citing *Commonwealth v. Jackson,* 924 A.2d 618 (2007).

---

[4] Transcript of Proceedings, May 2, 2018 at 5.
[5] Id. at 6, 8.

5

Specifically, Appellant argues that the Commonwealth failed to present sufficient evidence that Appellant knew he was not licensed or privileged to enter the victim's residence.

**§3503 – Criminal Trespass** in pertinent part provides:

(a) Buildings and occupied structures.--

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof;

18 Pa.C.S.A. §3503(A)(1)(i).

A review of the record demonstrates an abundance of evidence regarding the element of knowledge. Mr. Kennedy testified that he never gave Appellant permission to enter his property for any reason, a fact reiterated by Appellant himself when he testified that he has never been invited into the victims' property.[6] The animosity between the parties goes back years and was evidenced by Mr. Kennedy's reports to the building inspector and/or police regarding Appellant's use of his property. Appellant was clearly aware of the "bad blood" between the two men, as he took the extraordinary step of utilizing a stethoscope once inside the attic to listen for noise as a means of assuring no one would be home.[7] He testified that their bad relationship was the reason that he did not attempt to resolve the problem with Mr. Kennedy, and instead took matters into his own hands[8]: A decision he knew would result in him trespassing into their attic. The argument by Appellant that invitation by previous occupants some eight (8) years before somehow created implicit permission by the current occupants is not only absurd but belies any reasonable or rational belief considering their acrimonious relationship. Furthermore,

---

[6] Jury Trial Transcript Day 1, July 24, 2018 at 71, 166, 208.
[7] Id. at 188, 195, 203.
[8] Id. at 185.

Appellant's argument that there was no notice against trespass, and his reliance on *Commonwealth v. DeWitt*, 608 A.2d 1030 (1992) in support of the same, is without legal support: Appellant was not charged with §3503(B). Unlike subsection (B), subsection (A) contains no such requirement. Although Appellant seeks to defend his actions by explaining the reasons for them, the only permissible defenses are found in §3503(c):

> (c) Defenses.--It is a defense to prosecution under this section that:
> (1) a building or occupied structure involved in an offense under subsection (a) of this section was abandoned;
> (2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises; or
> (3) the actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain.

18 Pa.C.S.A. § 3503(c).

As stated above, the record refutes the notion that Appellant had any such *reasonable* belief.

Appellant also claims that the verdict was against the weight of the evidence. As the Court is well aware, challenges to the sufficiency and weight of the evidence are distinct. "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Commonwealth v. Furness*, 153 A3d 397 (Pa.Super 2016), citing *Commonwealth v. Antidormi*, 84 A.3d 736, 758 (Pa. Super. 2014). "On appeal, this Court cannot substitute its judgment for that of the jury on issues of credibility, or that of the trial judge respecting weight." *Commonwealth v. Sanchez*, 614 Pa. 1, 36 A.3d 24, 39 (2011). In this case, there was no abuse of

7

discretion in denying Appellant's post sentence motion seeking a new trial. The jury clearly found the testimony of Jerome Kennedy and his fiancé, Ashley Smith, credible. This, along with the video evidence, Appellant's admission to the trespass, and lack of permission, should not "shock" anyone's sense of justice that the verdict was contrary to the evidence.

The next two (2) appellate issues concern sentencing. First, Appellant claims that the Court imposed an unconstitutional probation condition restricting Appellant's access to his property. Second, Appellant alleges that the record does not support the order of restitution, making the sentence illegal.

Appellant argues that the Court's imposition of a condition restricting his access to his property is in violation of 42 Pa.C.S.A. §9754 (b) & (c)[9] and constitutional protections; that it is unduly restrictive and punitive, and not rehabilitative since Appellant has remedied the access by installing a plywood divider.

A Court may impose "...conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." 42 Pa.C.S.A. §9754(c)(13). By restricting Appellant's access to his property to between the hours of 10:00 A.M. and 2:00 P.M., Monday through Friday, the Court *did not* prohibit or deny Appellant use of his property, but rather struck a balance between the rights of Appellant and the need to enforce and promote the no-contact condition with the victims, who are the immediate neighbors of Appellant. The property on which Appellant was convicted of trespassing has been the victims' residence for eight (8) years. The adjoining property owned by Appellant is an investment property that has been without electricity for the entire eighteen (18)

---

[9] Appellant's Statement of Matters Complained of On Appeal filed January 9, 2019 claims it is a violation of 42 PA.C.S.A. §9752(b) and (c), however, as the error alleges a violation of a probation condition the Court is examining this under 42 Pa.C.S.A. §9754(b) and (c).

8

years he has owned it[10]. The lack of utilities makes the residence uninhabitable and restricts Appellant to working on his property solely during daytime hours.[11] Accordingly, twenty-four (24) hour access to the property is unnecessary. The Court's probation condition is consistent with the daytime hours that Appellant utilizes his property and is not unduly restrictive.

The Court also had to consider the reality of the situation, that the victims and Appellant have the chance for incidental contact for the foreseeable future, since they are immediate neighbors. Due to the nature of the crime, the unique relationship between the parties and the imposition of a no-contact order, the condition subjecting Appellant to limited use of his uninhabited investment property is both reasonable and in furtherance of his rehabilitative needs, as it substantially limits potential contact with the victims, while serving to remind Appellant of his illegal conduct.

Appellant's second issue challenging the legality of sentence, and his final claim of error, is that there is no nexus between Appellant's conduct and the restitution ordered. *Commonwealth v. Colon*, 708 A.2d 1279 (Pa.Super. 1998), (challenges to the appropriateness of a sentence of restitution are generally considered challenges to legality of sentence.) Appellant attacks the order on several grounds. First, contends that because he was not charged with a crime with an element of damage, such as criminal mischief, he cannot be held criminally responsible for restitution for an act of entering another's property. 18 Pa.C.S.A. §1106 (a) reads in pertinent part, "Upon conviction of *any* crime wherein property...or its value substantially decreased as a direct result of the crime... the offender shall be sentenced to make restitution in addition to the punishment prescribed thereof." Hence, a plain reading of the statute makes it

_____

[10] Jury Trial Transcript Day 1, July 24, 2018 at 177.
[11] Id.

9

clear that a court can order restitution upon conviction of *any* crime, not just crimes requiring proof of damage, as long as there is a direct causation between the criminal conduct and the damage. In terms of causation, the Commonwealth provided photographic and testimonial evidence regarding the removed insulation from the trespassed area.[12] Mr. Kennedy testified that he could not access the wall where the insulation was removed and he did not have any work done to the area that would have resulted in the removal. Appellant, on the other hand, did access the area and the record so reflects. The Commonwealth provided an estimate for reparations and a corresponding restitution Order was entered. The requirements of §1106 have been satisfied and the restitution Order did not result in an illegal sentence.

For the foregoing reasons, the judgment of sentence should be affirmed.

---

[12] Id. at 67-68; Commonwealth Exhibit 7.

10